MICHAEL A.P., an Incompetent by his Guardian ad Litem Carl L. Ricciardi and his Co-Guardians James Pahls and Jacqueline Pahls, Plaintiffs,

v.

Glenn A. SOLSRUD, d/b/a Glenn A. Solsrud Enterprises and Glenn A. Solsrud, Inc., ABC Insurance Company, a Fictitious Insurance Company, DEF Insurance Company, a Fictitious Insurance Company, GHI Insurance Company, a Fictitious Insurance Company, General Casualty Company of Wisconsin, a Domestic Insurance Company, and JKL Insurance Company, a Fictitious Insurance Company, Defendants,

The GOODYEAR TIRE & RUBBER COMPANY, a Foreign Corporation, Defendant-Respondent,

Glenn A. SOLSRUD, Third Party Plaintiff-Appellant,†

v.

GENERAL CASUALTY COMPANY OF WISCONSIN and Patrick Meacham, d/b/a Patrick Meacham Construction Co., Third Party Defendants,

The GOODYEAR TIRE & RUBBER COMPANY, Third Party Plaintiff-Respondent,

STANLEY CONSTRUCTION, INC., Third Party Defendant.

Court of Appeals

*No. 92–1730. Submitted on briefs May 10, 1993.—Decided June 29, 1993.*

(Also reported in 502 N.W.2d 918.)

†Petition to review denied.

139

140

141

142

For the third party plaintiff-appellant the cause was submitted on the briefs of *Thomas Terwilliger* of *Terwilliger, Wakeen, Piehler & Conway, S.C.* of Wausau.

For the defendant-respondent the cause was submitted on the brief of *Paul G. Kent* and *John Koeppl* of *DeWitt, Porter, Huggett, Schumacher & Morgan, S.C.* of Madison.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. Glenn Solsrud appeals a $78,131.88 judgment in favor of The Goodyear Tire & Rubber Company awarded pursuant to sec. 804.12, Stats., to compensate Goodyear for legal costs incurred in successfully litigating and proving certain issues that had been the subject of requests for admissions served upon Solsrud.[1] Solsrud contends that the trial court erred by imposing costs as a result of his wrongful denial of demands to admit submitted as part of the discovery process. Solsrud argues that the requests to admit were improper in form, that Solsrud had a legitimate reason to deny the asserted fact and that the trial court erroneously exercised its discretion by ordering all of Goodyear's legal expenses be paid as a sanction for the refusal to admit. Because we conclude that the requests to admit were proper in form, the trial court properly determined that the denial was made in bad

---

[1] For ease in disposition, Glenn A. Solsrud will be referred to as "Solsrud," Glenn A. Solsrud Enterprises will be referred to as "GASE" and Glenn A. Solsrud, Inc., will be referred to as "GASI."

faith and did not erroneously exercise its discretion by ordering all of Goodyear's legal expenses be paid as a sanction for Solsrud's bad faith denials, the judgment is affirmed.

## FACTS

The cause of action underlying this appeal was a personal injury action arising out of injuries Michael Pahls received while he was putting air in the left front tire of a forklift owned by Solsrud, d/b/a GASE and GASI. The tire and its components were manufactured and distributed by Goodyear. The accident occurred during the construction of Island Place, owned by Solsrud. Pahls and the other plaintiffs filed a complaint against Solsrud, GASE, GASI and various insurers, contending that their negligence caused Pahls' injuries.

Goodyear was joined as a defendant approximately one year after the action was filed, and asserted a cross-claim against Solsrud for contribution. At the time Goodyear was joined as a party, the record contained contradictory information concerning the amount of control Solsrud had over the Island Place project. Discovery of the extent and capacity of Solsrud's actual involvement in the project and whether Solsrud furnished the forklift for purposes of determining liability and insurance coverage was vital to Goodyear's contribution cross-claim. In an attempt to clarify these issues, Goodyear served Solsrud with a request for admissions.

Solsrud categorically denied the following requests: GASE is a trade name used by Solsrud; in August 1988, Solsrud did business as a sole proprietorship under the name of GASE; Solsrud was the general contractor for the Island Place project; Solsrud entered

into a contract with Island Place Limited Partnership; Solsrud entered into a subcontract with Patrick Meacham, d/b/a Meacham Construction for work on the Island Place project; Donald Lindquist was an agent of Solsrud and was authorized to enter into the subcontract with Meacham Construction; Donald Buisman performed services as a job superintendent on the Island Place project for Solsrud; and Stanley Construction was not the general contractor for the Island Place project. These denials necessitated extensive discovery and precipitated the necessity for an eight-day bifurcated jury trial to determine whether, through the involvement of Solsrud, GASE and GASI, Solsrud maintained sufficient control over the project to incur liability under the safe place statute, OSHA regulations and as the supplier of the forklift.

Solsrud continued to vacillate and obfuscate the issues concerning his control over the Island Place project throughout the trial. However, all of the matters Solsrud denied in response to Goodyear's request for admissions were either proven or admitted by Solsrud on adverse or cross-examination. Prior to trial, Solsrud failed to modify or supplement his responses to Goodyear's request for admissions.

Goodyear subsequently moved under sec. 804.12(3), Stats., for the assessment against Solsrud of its costs incurred in proving the allegations that Solsrud denied. After a hearing on the motion, the trial court granted Goodyear's motions, based on its findings that: (1) All of the matters Solsrud denied were proven at trial; (2) Solsrud failed to comply with sec. 804.11, Stats., in that his unqualified denials amounted to deceit by omission; (3) by failing to modify, withdraw, explain or supplement denials Solsrud violated sec. 804.11(1)(b); (4) Solsrud's denials were made in bad

145

faith; (5) Goodyear's $78,131.88 bill details expenses incurred only in connection with developing and proving the matters denied in response to Goodyear's request for admissions; (6) the charges are reasonable and were necessitated by Solsrud's denials and failure to explain or supplement those denials; (7) Solsrud is ultimately responsible for his denials. The court further commented:

> [Solsrud's denials], in light of Solsrud's testimony at trial, [rendered] the [trial] almost a mockery . . . .

> I don't have to go through each one of [the denials], because the evidence is so overwhelming that these denials were made in bad faith.

> . . . .

> I don't think a fair-minded, objective person could escape the conclusion that [the defense] has personally engaged in . . . brazen gamesmanship . . . .

## INTERPRETATION OF SEC. 804.12(3), STATS.

Solsrud asserts for various reasons that the trial court erred by imposing sanctions under sec. 804.12(3), Stats. That section provides:

> If a party fails to admit the genuineness of any document or the truth of any matter as requested [in a request for admissions], and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, the requesting party may apply to the court for an order requiring the other party to pay the requesting party the reasonable expenses incurred in the making of that proof, including reasonable attorney's fees. The court *shall make the order unless it finds that* (a) the request was held objec-

146

tionable pursuant to sub. (1), or (b) the admission sought was of no substantial importance, or (c) the party failing to admit had reasonable ground to believe that he or she might prevail on the matter, or (d) there was other good reason for the failure to admit. (Emphasis added.)

Before addressing Solsrud's assertions more fully, we must interpret the statute's language and determine whether it applies to this case. Interpretation and application of statutory language is a question of law that we review independently of the trial court. *Brandt v. LIRC*, 160 Wis. 2d 353, 361, 466 N.W.2d 673, 676 (Ct. App. 1991). The word "shall" is presumed to be mandatory unless a different construction is necessary to carry out the legislature's clear intent. *In re C.A.K.*, 154 Wis. 2d 612, 621, 453 N.W.2d 897, 901 (1990). We conclude that in sec. 804.12(3), Stats., the word "shall," used in reference to the court ordering reasonable expenses and attorney's fees, is mandatory, not directory, for the following reasons.

First, we note that the legislature, in enacting sec. 804.12, Stats., authorizing the imposition of sanctions for various discovery violations, differentiated between the sanctions by making some discretionary with the trial court through the use of the word "may"[2] and using the word "shall" in sections providing for other sanctions. The legislature using directory language to authorize some sanctions and presumptively mandatory language in providing for others, evinces its

---

[2] *See* subsec. (2), failure to comply with discovery order, and subsec. (4), failure to attend the party's own deposition, serve answers to interrogatories, respond to request for inspection or supplement responses when obligated to do so under sec. 804.01 (5), Stats.

intent to treat the sanctions differently. *See* Graczyk, *The New Wisconsin Rules of Civil Procedure*, ch. 804, 59 MARQ. L. REV., 463, 521 (1976).

Second, because the language of sec. 804.12(3), Stats., is almost identical to the language in FED. R. CIV. P. 37(c), federal caselaw construing that section is instructive. The sixth circuit ruled in *Bradshaw v. Thompson*, 454 F.2d 75, 81 (6th Cir. 1972), that "[Rule 37(c)] *requires* the Court to award expenses including reasonable attorney's fees to a party whose request for the admission of the truth of any matter under Rule 36 is denied and who thereafter proves the truth of the matter, unless any one of the four conditions is found to exist." (Emphasis added.) The plain language of sec. 804.12(3) requires the court to award expenses upon the motion of the party requesting the admissions if (1) admissions were properly requested, (2) the party upon whom the request was served failed to admit the genuineness of a document or the truth of a matter, (3) that was subsequently proved genuine or true and (4) the court finds that none of the four exceptions listed in the statute exist.

## APPLICATION OF SEC. 804.12(3), STATS.

We now turn to the question whether the trial court properly awarded Goodyear its requested costs and attorney's fees under sec. 804.12(3), Stats. We must uphold the trial court's factual findings unless they are clearly erroneous. Section 805.17(2), Stats. Whether, under sec. 804.12(3), those facts require the award of attorney's fees and costs to Goodyear is a question of law that we review independently of the trial court. *See Brandt*, 160 Wis. 2d at 361, 466 N.W.2d at 676.

■
It is undisputed that Goodyear properly served requests for admissions upon Solsrud and that Solsrud categorically denied most of the requests. Solsrud contends that Goodyear's requests for admissions failed to meet the requirements of sec. 804.11, Stats., because the requests "could not be admitted or denied without explanation." Not only does sec. 804.11 not require that requests for admissions be stated in a fashion that they can be admitted or denied without explanation, but subsec. (1)(b) provides, in pertinent part: "The answer shall . . . set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter. . . . [W]hen good faith requires that a party qualify an answer or deny only a part of the matter . . . the party shall specify so much of it as is true and qualify or deny the remainder."[3] Further, while some of the requests contain terms of art such as the terms "general contractor" or "agent," the nature and meaning of these phrases were clear and unambiguous within the context of the facts of this case and each of the requests was sufficiently clear to have permitted an answer. We therefore reject all of Solsrud's arguments based upon the contention that the requests were somehow defective because they could not be admitted or denied without explanation.

---

[3] For example, Solsrud argues that he was unable to answer the request to admit that he was "the" general contractor because there was more than one general contractor, making him only "a" general contractor. Good faith requires that Solsrud should have, at the very least, denied the assertion and explained that there was more than one general contractor and that he was only the "general contractor for financing for the IP project."

Solsrud challenges the court's determination that Goodyear proved the truth of the denied matters. The trial court made lengthy and detailed findings concerning each of the matters Solsrud denied and ultimately admitted both in his deposition and during his testimony at trial. We have reviewed Solsrud's arguments in support of his contention that Goodyear failed to prove the truth of two matters: (1) that Solsrud was "the" general contractor and (2) that Solsrud did business as a sole proprietorship during August 1988 under the name GASE.[4] Solsrud argues that at trial, Goodyear proved that Solsrud was one of two general contractors; therefore, Solsrud was "a" general contractor, not "the" general contractor. Similarly, Solsrud takes issue with the verdict question, "With respect to the Island Place Project, was Glenn A. Solsrud Enterprises a sole proprietorship operated by Glenn A. Solsrud?" Solsrud argues that this inquiry fails to establish that he did business as GASE in August 1988.

We reject those arguments as hypertechnical, semantic gymnastics. Solsrud admitted that he was the general contractor, at least as it related to financing the Project. The fact that this admission is more specific than Goodyear's request does not render the trial court's finding that Goodyear proved the matter requested clearly erroneous. Additionally, all parties knew that the critical time period was August 1988, and we fail to see the difference between "doing business as" GASE and "operating" GASE as a sole proprietorship. We therefore conclude that the trial

---

[4] As to the other matters denied, Solsrud contends that he had reasonable grounds to believe he might prevail. We address those matters separately.

court correctly determined that Goodyear proved the truth of each matter denied by Solsrud.

■

Next, we turn to Solsrud's assertions that (1) the trial court failed to address whether he lacked reasonable grounds to believe he would prevail or other good reasons for failing to admit and (2) he did in fact possess reasonable grounds to believe he would prevail on the matters denied and there were other good reasons for the failure to admit.[5] We conclude that the trial court's finding that Solsrud's denials were in bad faith amounts to a finding that he lacked reasonable grounds to believe he would prevail.[6] Additionally, when a specific finding is missing, appellate courts may assume that the missing finding "was determined in favor of or in support of the judgment." *Sohns v. Jensen*, 11 Wis. 2d 449, 453, 105 N.W.2d 818, 820 (1960). Because the trial court's expressed finding of bad faith denials by Solsrud amounts to a rejection of his claim that he had reasonable grounds for his denials, we conclude that the trial court's failure to use the "magic words" does not amount to reversible error. *See Englewood Community Apts. Partnership, Ltd. v.*

---

[5] Solsrud alludes to an argument that some of the requested matters were objectionable; however, because he failed to object to those matters and failed to fully argue the issue, we will not address it. Additionally, Solsrud does not contend that the admissions sought were of no substantial importance.

[6] Solsrud makes much of the fact that the trial court "struck" from its order a finding that he lacked reasonable grounds to believe he would prevail. However, both parties agree that the court did so at the request of Solsrud's counsel. Moreover, the fact that the court failed to make the specific finding does not render the court's order erroneous under sec. 804.12(3), Stats.

*Grant & Co.*, 119 Wis. 2d 34, 39 n.3, 349 N.W.2d 716, 719 n.3 (Ct. App. 1984).

Because we have concluded that the trial court's finding of bad faith amounts to a finding that Solsrud lacked reasonable grounds to believe he would prevail or other good reasons for failing to admit, we need not examine in detail each request to determine whether Solsrud had a reasonable ground to believe that he might prevail or other legitimate reason to enter his denial. We need only determine whether the record supports the trial court's finding.

We conclude that the record is replete with evidence supporting the court's finding. In every instance, Solsrud, on adverse examination, admitted the truth of the matter denied in response to Goodyear's request for admission. Several were also proven by documents bearing Solsrud's signature or dealing with his companies. In support of his contention that he had reasonable grounds to believe he would prevail, Solsrud reiterates his semantical arguments we previously rejected, cites testimony that allegedly conflicts with a finding of the truth of the matter and argues that some of the requests were directed at his bifurcated issues. However, "[t]he presence of a legal dispute does not obviate a party's responsibility to admit the truth of a matter which the party knows to be true" and does not allow a party to force the requesting party to prove the truth of those matters. *Chemical Eng'g Corp. v. Essef Indus., Inc.*, 795 F.2d 1565, 1575 (Fed. Cir. 1986). All of the denied requests concerned actions and relationships in which Solsrud was intimately involved. There is simply no legitimate basis for Solsrud to contend that he did not know that the mat-

ters he denied were true, a point reiterated several times by the trial court in its oral decision.

Solsrud also argues that he had no duty to supplement his responses to various of Goodyear's requests because they were "defacto amended by Solsrud's and Lindquist's depositions." We are not persuaded. The questions concerning the matters denied in response to Goodyear's request for admissions asked during the deposition were necessitated by Solsrud's denials. However, Solsrud cites no legal authority, and we find none, to support his proposition that information revealed through other discovery methods satisfies or obviates the requirement in sec. 804.01(5), Stats. Furthermore, Solsrud should not be allowed to escape sanctions under sec. 804.12(3) by virtue of Goodyear's ability to elicit the truth by deposing Solsrud and others.

## REASONABLENESS OF FEES

Solsrud contends that the trial court erred by awarding the total amount of costs and fees requested by Goodyear. Appellate courts will uphold trial court determinations of the amount of reasonable attorney's fees for services rendered unless the trial court erroneously exercised its discretion. *Standard Theatres, Inc. v. DOT*, 118 Wis. 2d 730, 747, 349 N.W.2d 661, 671 (1984). "A trial court properly exercises its discretion if it employs a logical rationale based on the appropriate legal principles and facts of record." *Chmill v. Friendly Ford-Mercury of Janesville, Inc.*, 154 Wis. 2d 407, 412, 453 N.W.2d 197, 199 (Ct. App. 1990).

■ Solsrud first argues that an affirmative response to various of Goodyear's requests would not have reduced Goodyear's expenses. Whether Solsrud's assertion is correct is immaterial under sec. 804.12(3), Stats. The statute requires the court to award "the reasonable expenses incurred in [proving the truth of the matters denied], including reasonable attorney's fees." The statute does not qualify that award by authorizing it only if the requesting party's litigation expenses would have been less had the matter been admitted, or reducing it by the amount of expenses that would have been incurred had the matter been admitted. We therefore do not address this issue further.

Next, Solsrud contends that the award includes costs and fees not incurred in proving the truth of the matters denied and that the costs and fees requested that related to proving the truth of the matters denied were unreasonably high. The trial court found that Goodyear's application for costs and attorney's fees included only those costs and fees associated with "developing and proving the matters which were addressed in the request for admissions . . . ." Solsrud argues that Goodyear is entitled only to the cost incurred for the time it took Goodyear to ask the questions that ultimately proved the truth of the matter, and not for the time spent listening to other counsel ask questions at depositions, give oral argument and make opening and closing statements. Solsrud also contends that Goodyear is not entitled to costs incurred during verdict and instruction conferences.

■ We disagree with Solsrud's suggestion that "reasonable expenses incurred in the [proof of the truth of the matters denied]" does not include time spent pre-

paring for the trial of the issues with which the requests were concerned, listening to information revealed by other counsel that may affect those issues, listening to opening and closing statements to learn the strategy of other counsel and how that strategy may affect those issues and attending conferences at which the instructions and verdict questions that go to the heart of the jury's resolution of those issues are discussed. The expenses incurred in the actual proof of the matters denied cannot be determined in a vacuum consisting of several lines of transcript in which the "magic" questions and answers appear. We agree with the trial court that Goodyear's application for costs and attorney's fees included only those costs and fees associated with developing and proving the matters addressed in the request for admissions and conclude that the trial court's award was reasonable.

Lastly, Solsrud contends that the trial court denied him a meaningful hearing on the reasonableness of Goodyear's requested expenses. First, we note that, despite the fact that he had a month to respond to Goodyear's motion, Solsrud failed to respond until the morning of the motion hearing, giving the court approximately thirty minutes to review his response and Goodyear even less time. Further, during the two-hour hearing on Goodyear's motion, Solsrud's counsel was given ample opportunity to argue that Goodyear's request was unreasonable. Finally, we note that Solsrud failed to object to the court proceeding to rule on the motion despite the short time it had to review Solsrud's response to Goodyear's motion. We conclude that the trial court gave Solsrud ample opportunity to be heard concerning the reasonableness of Goodyear's requested expenses and that the record supports the

trial court's determination that Goodyear's requested fees and costs were reasonable and directly related to Solsrud's improper denials in response to Goodyear's request for admissions.

In the face of increasingly complex and expensive litigation, discovery plays a vital role in issue formulation and limitation. As the role of discovery increases in importance, the need for effective sanctions against those who abuse the discovery process becomes greater. *See* Graczyk, *supra* at 523. "In this sense, section 804.12, [Stats.], is undoubtedly the most important rule in the discovery chapter, for it supplies the sanctions necessary to deter parties from either unjustifiably evading full disclosure or simply refusing to respond to discovery at all." *Id.* The judicial committee stated that the purpose of the sanction is to ensure that "[a]ny party who seeks to evade or thwart full and candid discovery incurs the risk of serious consequences . . . ." Note, Wis. Stat. Ann. sec. 804.12(4) (1992). The statute places the responsibility, indeed the duty, upon trial courts to prevent such conduct by imposing certain and sometimes severe sanctions upon persons who engage in it. Here, the trial court found that Solsrud abused and thwarted the statutory discovery process designed to clarify and simplify contested issues of fact by using denials to obscure and complicate the issues and to mislead Goodyear. The trial court determined that Solsrud's bad faith cost Goodyear $78,131.88. Such vigorous enforcement is exactly what the legislature intended in sec. 804.12: One who abuses the rules of discovery as a planned strategy must be made to suffer the financial consequences of his or her misconduct.

*By the Court.*—Judgment affirmed.